UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, WASHINGTON DEPARTMENT LICENSING, et al. | NO. **CV-12-3152-LRS** |
| Plaintiffs, | **ORDER DENYING CROSS-MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| THE TRIBAL COURT FOR THE CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, and its CHIEF TRIBAL COURT JUDGE TED STRONG, and the CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, a Federally Recognized Tribe, | |
| Defendants. | |

**BEFORE THE COURT** is the Defendant Confederated Tribes And Bands Of The Yakama Nation's (referred to herein as "Yakama Nation" or "Nation") Cross-Motion For Preliminary Injunction (ECF No. 44). The motion was heard with telephonic oral argument on January 31, 2013.

**BACKGROUND**

The 1994 Consent Decree entered by this court was the result of an action filed by the Yakama Nation in 1993 (CY-93-3050-AAM) which invoked this court's federal question jurisdiction to adjudicate disputes involving treaties between Indian tribes and the United States. In 2004, the Yakama Nation filed a

**ORDER DENYING CROSS-MOTION FOR PRELIMINARY INJUNCTION-    1**

petition (CV-04-3079-CI) to invoke this court's continuing jurisdiction under the Consent Decree to enforce the terms of said decree.  That petition resulted in the 2006 modification of the Consent Decree embodied in a document titled "Settlement Agreement, Agreed Changes To Consent Decree, And Order."

On January 10, 2013, this court entered an order (ECF No. 75) granting a preliminary injunction to the Plaintiffs (referred to herein as the "State of Washington" or "State"), preliminarily enjoining any further proceedings in Yakama Nation Tribal to enforce the Consent Decree (compel the State to continue with mediation), finding that this federal court has exclusive express and inherent jurisdiction over its Consent Decree.

**DISCUSSION**

"A [party] seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008)."A preliminary injunction is an extraordinary remedy never awarded as of right."  *Id*. at 376.

Whether the State has properly terminated the Consent Decree is the subject of the Yakama Nation's cross-motion for preliminary injunction which seeks to compel the State to engage in further mediation with the Nation.[1]  The Yakama Nation contends the State has breached the Consent Decree because it has not abided by Paragraph 4.7d which provides in relevant part:

---

[1] The Yakama Nation has filed a "Limited Answer And Affirmative Defenses" (ECF No. 76), without waiving its challenge to the jurisdiction of this court.

**ORDER DENYING CROSS-MOTION FOR PRELIMINARY INJUNCTION-    2**

> Both parties shall pursue the mediation process in good faith until the dispute is resolved or until the mediator determines that the parties are not able to resolve the dispute.

The Nation contends the State has not pursued the mediation process in good faith because the mediator has yet to formally declare an impasse.[2]  According to the Nation, the State must mediate with the Nation in good faith until: 1) the dispute is resolved successfully, or 2) until the mediator determines that the parties are not able to resolve the dispute.  Per the Nation, these are the only two possibilities, and until the mediator formally declares an impasse, the State cannot terminate the Consent Decree.

Paragraph 4.7d of the Consent Decree was amended in 2006 to add a new sentence as follows:

> If the dispute is not resolved by mediation, the parties may agree to have a neutral third party or arbitrator make a final binding decision resolving the dispute **or, if a dispute is unresolved for more than 180 days, either party may give notice of intent to terminate this agreement as provided for *infra*.**

(Emphasis added).

The "*infra*" refers to Paragraph 4.27 which was added to the Consent Decree in 2006.  It provides:

> Amendments to the Consent Decree shall be considered upon the written request of either party.  Disputes regarding requests for amendment of this Consent Decree shall be subject to the dispute resolution process in Paragraph 4.7 of this Consent Decree.  **The agreement and processes embodied in this Consent Decree shall remain in effect unless and until such time as:** (a) the parties mutually agree in writing that the decree should be vacated or terminated and superseded by a new agreement between the parties; **or (b) if a party objects to continued participation in the processes and framework provided for in this decree and desires to withdraw and terminate the agreement, it may do so only upon not less than one hundred eighty (180) days written**

---

[2]At oral argument, counsel for the Nation confirmed the sole basis for its motion is that the State commenced the captioned action prematurely without the mediator making a formal declaration of impasse.

**ORDER DENYING CROSS-MOTION FOR PRELIMINARY INJUNCTION-    3**

1

**notice to the other party and a government to government meeting or consultation between them occurs to discuss their proposed reasons for doing so.**

2

3   (Emphasis added).

4          The State contends it complied with Paragraph 4.7d because the parties'

5   dispute remained unresolved for more than180 days and it gave notice of intent

6   to terminate the Consent Decree.

7          The Nation is not likely to succeed on the merits.  It is not likely to

8   establish the State improperly terminated the Consent Decree because it did not

9   await formal declaration of impasse by the mediator.  The Nation reads

10  Paragraph 4.7d, and in particular the first sentence of that paragraph ("[b]oth

11  parties shall pursue the mediation process in good faith until the dispute is

12  resolved or until the mediator determines that the parties are not able to resolve

13  the dispute"), in isolation from Paragraph 4.27.  The "*infra*" in the last sentence

14  of Paragraph 4.7d ("[i]f the dispute is not resolved by mediation, the parties may

15  agree to have a neutral third party or arbitrator make a final binding decision

16  resolving the dispute or, if a dispute is unresolved for more than 180 days, either

17  party may give notice of intent to terminate this agreement as provided for

18  *infra*") is a clear reference to Paragraph 4.27.[3]  It is apparent from Paragraph

19  4.27 that while the parties are required to pursue mediation in good faith while

20  it is ongoing, they are not obliged to engage in mediation indefinitely, and are

21  not obliged to await a formal declaration of impasse by the mediator before

22  considering mediation completed.

23         The reference in Paragraph 4.27 to "[t]he agreement and processes

24  embodied in this Consent Decree" clearly pertains to "the dispute resolution

25

26         [3] Indeed, it is noted that in the Nation's opening memorandum (ECF No.

27  45), it made no mention of Paragraph 4.27.

28

**ORDER DENYING CROSS-MOTION
FOR PRELIMINARY INJUNCTION-    4**

process in ¶ 4.7" of which mediation is a mandatory and integral component.
Per Paragraph 4.27, the "processes embodied in this Consent Decree shall
remain in effect unless and until such time as . . . a party objects to continued
participation" therein and desires to withdraw from and terminate the Consent
Decree, and does so upon satisfaction of certain conditions precedent, none of
which is that the mediator formally declare an impasse.  Were Paragraph 4.27
read to require formal declaration of impasse by a mediator, it would duplicate
what is set forth in Paragraph 4.7d and be rendered mere surplusage.  Paragraph
4.7d would not need to provide for anything "*infra*" if its reference to a "dispute
. . . not resolved by mediation" or "unresolved for more than 180 days" means
that the mediator formally declared an impasse and the parties may now (after
180 days have passed), give notice of intent to terminate the Consent Decree.
Any additional conditions precedent to notice of intent to terminate the Consent
Decree could have been provided in Paragraph 4.7d without need of a detailed
separate provision (Paragraph 4.27).

Furthermore, requiring the parties to wait 180 days after a mediator's
formal declaration of impasse to provide notice of intent to terminate does not
make sense in light of the dispute resolution procedures and attendant time lines
set forth in the Consent Decree.  Pursuant to Paragraph 4.7a of the Consent
Decree, the State invoked the dispute resolution process in a March 16, 2011
letter to the Yakama Nation.  (Ex. I to ECF No. 6).  As required by Paragraph
4.7b., the State and the Yakama Nation then had a face-to-face meeting on June
13, 2011 in Cle Elum.  (ECF No. 6 at Paragraph 41).[4]  Another face-to-face

---

[4]Paragraph 4.7b requires the face-to-face meeting occur within 30 days of
the written notice invoking the dispute resolution process, but obviously the
parties' first face-to-face meeting did not occur within that time frame.

**ORDER DENYING CROSS-MOTION
FOR PRELIMINARY INJUNCTION- 5**

meeting occurred on September 14, 2011 in Yakima, but no progress was made. (ECF No. 6 at Paragraph 46).  Because the parties were unable to resolve their dispute within 60 days of the written notice provided by the State on March 16, 2011, invoking the dispute resolution process, Paragraph 4.7c. required the parties to engage the services of a mediator.[5]  The parties eventually did this, as explained below.  In conformance with Paragraph 4.7d., the State, in a letter to the Yakama Nation dated September 19, 2011 (Ex. M to ECF No. 6), provided written notice of its intention to terminate the Consent Decree because the parties' dispute had remain unresolved for more than 180 days (since March 16, 2011).  The letter advised, however, that "[i]n keeping with the spirit and letter of the Consent Decree, DOL [Department of Licensing] is willing to continue negotiations with the Yakama Nation during the 180 day termination period and we remain hopeful an agreement will be reached."  The parties then engaged the services of a mediator as required by Paragraph 4.7c, and mediation efforts took place within this "180 day termination period."  (ECF No. 6 at Paragraph 49). A mediation session occurred on March 23, 2012 on the Chehalis Indian Reservation and the parties continued discussions with the mediator during the spring, summer and fall of 2012.  The mediation efforts constituted the "government to government meeting or consultation" between the State and the Yakama Nation required by Paragraph 4.27.  On December 5, 2012, the date of the State's letter to the Yakama Nation advising that it considered the Consent Decree terminated as of that date (Ex. 1 to ECF No. 60), more than 180 days

----

[5] "If the parties are unable to resolve the dispute within sixty (60) days of the date written notice described in ¶4.7.a, the parties **shall** engage the services of a mutually-agreed-upon qualified mediator to assist them in attempting to negotiate the dispute." (Emphasis added).

**ORDER DENYING CROSS-MOTION FOR PRELIMINARY INJUNCTION-    6**

1   had passed since the State first advised in its letter of September 19, 2011 of its
2   intent to terminate the Consent Decree.  Accordingly, the State provided the 180
3   days notice required by Paragraph 4.7d and Paragraph 4.27.

4        The State complied with all of the provisions of Paragraph 4.7 relating to
5   the dispute resolution process and complied with Paragraph 4.27 relating to
6   termination of the Consent Decree. The Consent Decree contemplates the entire
7   dispute resolution process, including mediation, can potentially be completed
8   within180 days.  This is not unrealistic considering that had the 30 day and 60
9   day deadlines specified in Paragraph 4.7a and 4.7b been strictly adhered to by
10  the parties, there would still have been 120 days for mandatory mediation to
11  take place before the State was entitled to provide notice of intent to terminate
12  the Consent Decree due to the parties' dispute having remained unresolved for
13  more than 180 days.

14        Per the plain language of the Consent Decree, a formal declaration of an
15  impasse by a mediator is not a prerequisite to termination.[6]   The Consent
16  Decree can be terminated so long has a dispute has been unresolved for a period
17  of more than 180 days, written notice of proposed termination is provided, and
18  there is a government to government meeting or consultation which occurs to
19  discuss the reasons for the proposed termination.  The parties are obliged to
20  comply with the dispute resolution process, but such compliance does not
21  require waiting for a mediator's formal declaration of impasse.  Per the Consent

22
23        [6] Paragraph 4.6 prevents either party from petitioning this court to enforce
24  the decree unless "the dispute resolution process described in ¶4.7 has been
25  followed in good faith to completion without successful resolution."  Paragraph
26  4.6 does not define "completion" as requiring a formal declaration of impasse
27  by a mediator.
28
**ORDER DENYING CROSS-MOTION**
**FOR PRELIMINARY INJUNCTION-    7**

Decree, a dispute could be "unresolved" without there having been a mediator's formal declaration of impasse.[7]  Through Paragraph 4.27, the parties provided themselves an "out" in the event a dispute remained unresolved for in excess of 180 days.

Because the Nation is not likely to succeed on the merits, the other preliminary injunction factors (likelihood of irreparable harm, balance of the equities, and public interest) are of no significant consequence.  Nonetheless, consideration of those factors does not compel issuance of a preliminary injunction.  The Nation asserts it is irreparably harmed by being deprived of a right to mediate and by being haled into this court to answer the State's claim that it has properly terminated the Consent Decree.  These assertions do not persuade in light of this court's finding that the Nation is not likely to succeed on its contention that the State is required to continue mediating its dispute with

///
///
///
///
///
///
///
///

---

[7] Although the mediator did not formally declare an impasse, he commented in his November 28, 2012 e-mail to counsel that "it seems obvious to me that we are reaching the end of negotiations" and he recognized "that the parties are more likely to be moving beyond the mediation phase in the near future." (Ex. A to ECF No. 7).

**ORDER DENYING CROSS-MOTION FOR PRELIMINARY INJUNCTION-    8**

the Nation pending a formal declaration of impasse by the mediator.[8]   The

balance of the equities does not tip in favor of the Nation.  At most, the equities

are equal between the parties considering the record indicates that for at least

several years now, the Nation has not complied with the audit requirements of

the Consent Decree which would enable the State to determine if it has collected

all of the taxes to which it is entitled.  It follows that it is not in the public

interest that a preliminary injunction be issued in favor of the Nation.

**CONCLUSION**

     The Yakama Nation's Cross-Motion For Preliminary Injunction (ECF No.

44) is **DENIED**.

     The Nation's Motion To Dismiss (ECF No. 67), filed January 6, 2013,

will be heard without oral argument once briefing is completed.  The court

_____

     [8] At oral argument, counsel for the Nation represented the primary harm to

the Nation was being deprived of its right to mediate pending a determination

by the mediator that the parties' dispute could not be resolved.  To the extent the

Nation argues that failure to issue an injunction will result in financial harm to

the Nation if the State resumes collecting a fully loaded tax on off-reservation

fuel distributors before deliveries are made to the Yakima Nation Reservation, it

appears any such harm could ultimately be remedied by an award of damages

(refund of any improperly collected taxes due to termination of the Consent

Decree).  That said, it must be recognized this court has yet to make a final

determination that it will grant the declaratory and/or injunctive relief sought by

the State to confirm termination of the Consent Decree and to confirm the

Department of Licensing's right to assess taxes on off-reservation fuel

purchases by the Yakima Nation.

**ORDER DENYING CROSS-MOTION
FOR PRELIMINARY INJUNCTION-   9**

1    exercises its discretion under LR 7.1(h)(3)(B)(iii) to hear that motion without

2    oral argument.  The motion involves issues which have already been adequately

3    orally argued in conjunction with Plaintiffs' motion for preliminary injunction

4    and the Yakama Nation's cross-motion for preliminary injunction.

5        **IT IS SO ORDERED.**  The District Court Executive is directed to

6    forward copies of this order to counsel of record.

7        **DATED** this ___11th___ day of February, 2013.

8

9                                *s/Lonny R. Suko*

10   _____

11                        LONNY R. SUKO
                   United States District Court Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING CROSS-MOTION
FOR PRELIMINARY INJUNCTION-    10**